```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Ming Jin, et al.,              :

     Plaintiffs,             :

  v.                           :         Case No. 2:07-cv-0068

Gerard Heinauer, et al.,       :         MAGISTRATE JUDGE KEMP

     Defendants.             :

<u>OPINION AND ORDER</u>

    Plaintiffs Ming Jin and Dong Li commenced this action on January 30, 2007.  The named defendants are Gerard Heinauer, Director, United States Citizenship and Immigration Services, Nebraska Service Center; Mark Hansen, District Director, United States Citizenship and Immigration Services, Cleveland Office; Cheryl L. Gallegos, Officer in Charge, United States Citizenship and Immigration Services, Columbus Office; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; Alberto Gonzalez, Attorney General of the United States; Michael Chertoff, Secretary of the Department of Homeland Security; and Robert S. Mueller, III, Director of the Federal Bureau of Investigation.  Plaintiffs both filed applications for adjustment of status, and seek an order directing the defendants to decide those applications.  The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, to remand this case to the Citizenship and Immigration Services to await completion of the required FBI background check.  The case has been referred to the Magistrate Judge for complete adjudication pursuant to 28 U.S.C. §636(c).

I.

    The following facts are assumed to be true for purposes of the pending motion.  Dong Li and Ming Jin are citizens of the

People's Republic of China who entered the United States in 2002 on non-immigrant visas.  Dong Li and Ming Jin were married in China on September 28, 1996, and continue to live as husband and wife.  They each filed an application for adjustment of status with the Nebraska Service Center on July 23, 2004.  Although Mr. Li and Mrs. Jin are *prima facia* eligible for an adjustment of their status, their applications remain pending.  Action on their applications has been delayed due to the fact that the FBI has yet to complete its name check on Ming Jin.  The FBI received name check requests for both plaintiffs on March 4, 2005, and completed its name check on Dong Li on May 10, 2005.

Prior to filing this suit, the plaintiffs pursued various avenues for obtaining information about their applications and the reasons for delay.  Ming Jin contacted her Congresswoman and United States Senators for assistance in expediting the applications.  On each occasion, she was told that the delay was due to FBI security checks which had not been cleared.  Ming Jin received similar information from an immigration officer on November 13, 2006.  The delay has resulted in significant hardship to the plaintiffs, including the fact that they will not be able to apply for citizenship for a longer period of time.  Ming Jin has continued to work in the same laboratory and department at The Ohio State University throughout the process, but has had to forego several opportunities to attend international conferences, as well as opportunities for federal research grants due to her status.

II.

Where the defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court need only determine whether it has jurisdiction over the plaintiff's claims.  The United States Court of Appeals for the Sixth Circuit has adopted two

standards of dismissal for lack of subject matter jurisdiction depending on whether the movant makes a facial or a factual attack on the plaintiff's complaint.  See Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  A facial attack merely challenges the sufficiency of the pleadings.  In reviewing a facial attack, the Court applies the same standard applicable to Rule 12(b)(6) motions.  On the other hand, where the movant makes a factual attack on jurisdiction, the Court does not presume that all well-pleaded allegations of fact are true.  Rather, in such cases, the Court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdiction facts.  Id.; see also Tennessee Protection and Advocacy, Inc. v. Board of Education, 24 F.Supp.2d 808, 812-813 (M.D. Tenn. 1998).  The Court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction does not exist."  Ohio Nat. Life Ins. Co., 922 F.2d at 325.

### III.

The defendants in this case purportedly present a factual challenge to this Court's subject matter jurisdiction.  However, they concede that under the Administrative Procedures Act, a district court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. §706(a).  Therefore, at a minimum, this Court has jurisdiction to determine whether the defendants have "unlawfully withheld" or "unreasonably delayed" action on the plaintiffs' applications for adjustment of their status.  Jurisdiction also arises from an agency's duty "to proceed to conclude a matter presented to it" within a reasonable time.  5 U.S.C. §555(b).  While the APA alone does not provide the Court with an independent basis for subject matter jurisdiction, these sections in conjunction with the federal question statute, 28 U.S.C. §1331, do provide a sufficient basis

for jurisdiction.  See Alkeylani v. Department of Homeland Security, ___ F.Supp. 2d ___, 2007 WL 2800380 at *4 (D Conn. Sept. 20, 2007).  Having concluded that jurisdiction exists under the APA and 28 U.S.C. §1331, this Court need not determine whether the plaintiffs might also be entitled to relief under the Mandamus Act, 28 U.S.C. §1361.  See Valona v. United States Parole Commission, 165 F.3d 508, 510 (7th Cir. 1998) ("APA...authorizes district courts to 'compel agency action unlawfully withheld or unreasonably delayed' without the need of a separate action seeking mandamus").

The APA, however, does not apply by its own terms where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. §701(a).  While the defendants point out that under 8 U.S.C. §1252(a)(2)(B)(i) no court has jurisdiction to review any judgment regarding the granting of an application for adjustment of status, the statute says nothing concerning jurisdiction to review a failure to adjudicate such an application.  See Paunescu v. INS, 76 F.Supp.2d 896, 899-900 (N.D. Ill. 1999) (Section 1252(a)(2)(B) applies only to denials of relief, and the failure to adjudicate an application is not a "judgment" as that term is used in Section 1252(a)(2)(B)(i)).  Therefore, this Court concludes that Section 1252(a)(2)(B)(i) does not preclude judicial review in this case.

Further, although the defendants have discretion as to the grant or denial of applications for adjustment of status, there is no discretion over whether or not to act on the application.  See Cao v. Upchurch, 496 F.Supp.2d 569, 573 (E.D. Pa. 2007); Shah v. Hansen, slip op., 2007 WL 3232353 at *5 (N.D. Ohio Oct. 31, 2007); see also Tang v. Chertoff, 493 F.Supp.2d 148, 153 (D. Mass. 2007)(to be immune from judicial review, the act must be specified as discretionary in INA; the subchapter at issue does

4

not address, much less specify any discretion associated with the pace of the pending application). It is noteworthy that the district court in Tang relied in part for its analysis on the opinion of the Sixth Circuit Court of Appeals in Abu-Khaliel v. Gonzales, 436 F.3d 627, 633-34 (6th Cir. 2006) holding that an immigration judge's decision not to grant a continuance is reviewable because such an act is not specified in the relevant subchapter to be in the discretion of the Attorney General. Accordingly, the Court determines that the defendants have a non-discretionary duty to act on plaintiffs' pending applications. Therefore, the failure to do so within a reasonable time is not immune from judicial review.

## IV.

In considering the plaintiffs' action to compel the defendants to process their applications for adjustment of status, the Court will focus on the reasonableness of the delay. In this case, more than three years have passed since the plaintiffs filed their applications with the Nebraska Service Center. This delay equals or exceeds the length of time found to be unreasonable by other courts. See Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M. 1999) (two and a half years); Paunescu, 76 F.Supp.2d at 902-03 (two years); Alkeylani, 2007 WL 2800380 at *6 (three years).

In defense of the delay in processing the plaintiffs' applications, the defendants offer the Declaration of Michael A. Cannon, the section chief for the FBI's name check program. Mr. Cannon provided a similar declaration in Chao v. Gonzales, slip op., 2007 WL 3022548 (N.D. Cal. Oct. 15, 2007). In both the Chao declaration and the declaration in this case, Mr. Cannon describes a four-step process for completing a name check. In the first stage (batch processing), up to ten thousand names are uploaded onto an FBI system and are electronically checked

against the FBI's Universal Index.  Historically, some sixty-eight percent of the name checks submitted by USCIS are returned to USCIS within forty-eight hours as having "No Record."  The second stage (name searching) involves physically entering the name of each of the roughly thirty-two percent of applicants for which additional review is required into the computer base and searching different fields and information.  This step is completed within thirty to sixty days and disposes of an additional twenty-two percent of applicants as having "No Record".  The third and fourth stages are file review and dissemination for the ten percent of applicants that remain afer completion of the first two steps.  Records prior to October 1995 exist only on paper and may be located in one or more of the various FBI field offices.  Unless a name check request is expedited, the FBI follows a policy of first in, first served.

　　　The name check for Ming Jin is apparently among the ten percent which could not be completed in the first two steps. Without specifically referencing her status, Mr. Cannon points to the sheer volume of name check requests and the time-consuming and labor-intensive nature of the name check process as possible reasons for delay.  He also states that the FBI is developing technology updates and a Central Records Complex in a long-term effort to improve the process and is studying a fee structure to reflect the actual cost of providing name check services.  At the present time, the FBI cannot, according to the declaration, apply additional resources to process name checks without pulling critically needed personnel and funding from other programs. Nor, according to the declaration, can the FBI determine where in the process a given name check is or how long it will take to complete any given name check, such as Ming Jin's.

　　　Courts have not allowed USCIS simply to reply on excuses such as a high volume of applicants and scarce resources for

lengthy delays in processing applications for adjustment of status.  See Tang, 493 F.Supp.2d at 158; Liu v. Chertoff, slip op., 2007 WL 2023548 (E.D. Cal. Jul. 11, 2007).  Generalized notions of "national security" or post 9/11 concerns also have been held insufficient.  See Singh v. Still, 470 F.Supp.2d 1064, 1069 (N.D. Cal. 2007)(mere invocation of national security not enough to render agency delay reasonable), Santillan v. Gonzales, 388 F.Supp.2d 1065, 1082 (N.D. Cal. 2005)(absent particularized showing of serious risk to national security, defendants' national security argument cannot excuse administrative backlogs and bureaucratic delay).  In fact, such an excuse is self-defeating in a case such as this one where the plaintiffs have resided in the United States for several years.  If a legitimate risk to national security exists, then a prompt security check would be in order rather than continued delay.  See Saleem v. Keisler, ___ F.Supp.2d ___, 2007 WL 3132233 at *13 (W.D. Wis. Oct. 26, 2007).  USCIS likewise cannot show compliance with its own timeliness requirements by shifting the onus to the FBI.  Fu v. Gonzales, slip op., 2007 WL 1742376 at *4 (N.D. Cal. May 22, 2007); Gelfer v. Chertoff, slip op., 2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007).  If the FBI is not completing Ming Jin's name check in a timely manner, it may be incumbent on USCIS to make an expedited request or otherwise ensure that her name check is completed within a reasonable time.  See Shah, 2007 WL 3232353 at *5 n.3.

Here, the defendants have made no showing of special circumstances or unusual challenges to justify a delay of more than three years.  There is no evidence that either Ming Jin or Dong Li poses a national security risk or that they provided any false, misleading, or incorrect information on their applications that might have caused such a delay.  Under these circumstances, plaintiffs are entitled to some form of injunctive relief.  Out

7

of deference to the administrative process, however, the Court will defer such relief for ninety (90) days to provide the defendants with a final opportunity to complete their action on the plaintiffs' applications for adjustment of status.  If the applications are not resolved within this time period, the Court will set a date certain for final action.

V.

Based on the forgoing, the defendants' revised motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction or, in the alternative, to remand the plaintiffs' case (Doc. #17) is GRANTED in part and DENIED in part.  This matter is remanded to the United States Citizenship and Immigration Services for final action within ninety (90) days on the applications of Ming Jin and Dong Li for adjustment of their status.  The defendants shall provide the Court with a status report no later than ninety (90) days from the entry of this opinion and order.  The Court shall retain jurisdiction to grant appropriate relief if the plaintiffs' applications are not resolved by the end of this period.

/s/ Terence P. Kemp
United States Magistrate Judge